Clerk, please call the next case. 110-0040, JMI Crafted Commercial Millwork. Millwork v. Sheehan. May it please the Court, Mr. Casey. Kathleen Olberg for the appellant, JMI Crafted Commercial Millwork. We're here today with me asking you to reverse the circuit court, and it's a similar argument to Mr. Turner's, only mine's a little bit different. In this instance, we have a petitioner for an employee who was injured in a car accident on September 11, 2003. There's no dispute that he was in the course of some employment on that day, that his truck that he was driving for the employer broke down, that that truck was being towed, and the tow truck that he was in was in a motor vehicle accident. The arbitrator found that the petitioner did, in fact, have an accident that arose out of and in the course of his employment, but that any injuries he suffered from that accident were resolved by November 13, 2003, and so that any medical causal connection ended as of that date, and that any entitlement to lost time benefits, or TTD, also terminated as of that date. On commission review, the commission overturned the decision of the arbitrator and determined that a medical causal connection existed past November 13, until the time of hearing, and that TTD benefits were, in fact, owed past November 13, 2003. And I just heard Mr. Turner argue about manifest weight, and I'm going to make a distinction here in my argument. I don't deny the commission the right for their de novo review of this case. I don't deny them the right to reverse the arbitrator if they want. But I do hold an issue with the commission reversing an arbitrator on evidence that's not correct. And the commission decision in itself contains numerous factual errors. And that's my contention in this case, is that it's against the manifest weight because the commission was not technically correct in the evidence that they cited in their decision overturning the arbitrator. And if you're going to overturn the arbitrator, you have to be technically correct about it. Can you summarize or illuminate how they were factually incorrect? Well, let's start with the accident itself. One of the main key things that the commission had to determine in finding that a medical causal connection existed was a recharacterization of the automobile accident as being significant. Now, there's no characterization of the automobile accident by the arbitration or the arbitration decision, by the arbitrator or the arbitration decision. In finding the accident to be significant, the commission cites in its statement of facts that the petitioner was taken by the scene from an ambulance to South Suburban Hospital. He was not. That is erroneous. In reviewing the records of South Suburban Hospital that are attached that the commission later cites, he was not taken there by ambulance. Well, not to parse words with you, but significant. So does significant hinge on whether or not somebody is taken by ambulance to a hospital? Couldn't the injury be significant in terms of the causal connection without requiring somebody to go to emergency room? Not in terms of the way the commission phrased it in their decision. What the commission said was that the impact was so violent that the petitioner needed to be taken by ambulance. And, therefore, because the impact was so violent and he needed to be taken by an ambulance, he had a significant accident. So in this case, we have a chain of causal connection where the petitioner has three or four intervening accidents that the arbitrator found. So he wasn't taken by ambulance to South Suburban Hospital? He was not taken. And, in fact, when he gets to South Suburban, his complaints are to his head, to his neck, his wrists, and his back. He's discharged at South Suburban with essentially a neck sprain and a low back sprain and a wrist sprain. And he's given some ibuprofen. So if you're going to characterize the accident as significant, which the commission does in order to continue its argument that causal connection carried on, you have to have more on the initial accident. And their initial characterization of the accident is incorrect. The second thing that the commission points out is that so it starts with characterizing the accident as significant, which I take issue with. And they say that he had to go to the hospital. And the second part is they talk about him being jostled around in the car and in the tow truck and that the tow truck was hit by two things and launched up in the air. So was he taken to the hospital? He went to South Suburban on his own. Okay. That is actually not – there are so many versions of how the tow truck was struck in the medical records and in the petitioner's testimony itself that characterizing the way the commission did that the tow truck was struck twice and thrown up in the air is technically not correct. The petitioner did testify to that. But with the medical records and the records attached as the exhibit state is the tow truck rear-ended a car in front of it and then was rear-ended by somebody else. So if you're going to determine that the accident was significant based on the amount of impact, you have to analyze the impact throughout the entire record. And not just on the testimony of the petitioner at the time who said that the tow truck was thrown up in the air. So are you basically saying that from the beginning he really didn't have any kind of a significant injury that caused him any problems? No, I'm not saying that at all. I'm saying that he was involved in an accident and that he suffered injuries. That's not disputed? No, that's not disputed. Okay. So why – But it's just a car accident. It's not a significant car accident. It's not the accident that's described by the commission. Well, whether or not it's significant or serious is sort of in the eyes of the beholder, so to speak. I mean, let's assume he has an accident. He testifies to there's pain, there's problems, supported by some medical opinions, and then you have these other incidents. So are you arguing, I'm unclear, that these were intervening independent causes, which ostensibly could be argued to break the causal connection? Or are you saying it wasn't that serious in the first place, so he shouldn't really recover? No, that's not at all my argument. My argument is that he had an accident, that these intervening accidents broke the chain of causal connection. All right. Then we need to probably focus on that. Why did they break the causal connection? They broke the chain of causal connection. Let's start with the first one, with the rollover incident, where he testifies at trial that he was on his hands and knees next to his car when a car that was going 40 miles an hour came out of him, at him, and he had to roll out of the way. That's a fairly significant incident. What the commission decision says is, we don't think it's significant. That's not, they say that the facts of that rollover incident were not provided in the trial testimony. And, in fact, they were. The petitioner testified to it. The physical therapy records contain that history. Dr. Webber's records contain that history. The commission says, this is just kind of an odd-out-there history that's not really supported by anything else. That's incorrect. And it continues my theme of me taking issue with the commission overturning the decision of the arbitrator in this matter, based on incorrect conclusions or incorrect statements in regard to the record. There's a difference between something being incorrect and the commission choosing between two conflicting versions or two different inferences that could be from the evidence. Now, I understand when you talk about either he was taken by ambulance to the hospital or not. But, you know, whether or not it's a significant accident or not, whether or not the rollover was a significant change in his condition, aren't those the kind of things the commission is allowed to decide from the evidence? I do think that that's within the purview of the commission to decide that. But when they come to that decision, I want it to be on the correct factual information within the record. And my basis here is that the commission did not consider the factual evidence of the record. So on the rollover, we've got his testimony, right? Right. What else do we have? We have the record contained within the physical therapy notes and the records contained within Dr. Webber's records. And that they are conflicting? Yes. And cannot the commission decide which one they want to credit? I'm sorry? Can't the commission decide which one of the conflicting bits of evidence they want to credit? They can. But that's not what the commission decided in this fact. The commission didn't decide that one evidence carried more weight than the other. The commission decided that they didn't necessarily think it happened because there wasn't enough evidence in the record. That's where I'm taking issue with the commission on this. They didn't say we're giving it more weight. And when you look at the medical causal connection issue, when you get down to Dr. Chang versus Dr. Zellbe, the commission said Dr. Zellbe didn't have all the facts, therefore, we're not going to give his opinion any weight. And in the reverse, they say Dr. Chang, we're going to give his opinion all of the weight. But Dr. Chang didn't have all the facts. When you look at Dr. Chang's evidence deposition testimony, he never reviewed the physical therapy records. He never reviewed the records of Dr. Webber. He never reviewed the records of Dr. Shiami. And he never had any of the Petitioner's, any of the histories of the Petitioner's intervening accidents, the rollover, the going up the fishing hill, the sex incident. Dr. Chang never had any of those. And he was very honest in his testimony. Didn't know anything about it. How would you respond to this argument? You're not disputing there was an accident. You're not disputing the claimant sustained some pain. And you have all of these treatments. Initial physical therapy indicated he had intermittent pain that was shooting pains in his legs. I think it's clear, maybe I can be wrong and point this out, Webber was talking about the need for the MRI prior to the rollover accident. So how do you respond to probably his argument, look, there were some incidents, clearly. However, there's no evidence that these were truly intervening incidents as exposed to aggravations of a back condition that originated from the original accident. And if they are aggravations and exacerbations, why wouldn't the claimant recover? But the claimant on his own testimony on 10-6, per the records, was 100% improved. His leg pain was 60% gone. He was great. He went into Dr. Chiami after that on 10-12 and said, I feel good. Everything's all better. That's what I'm pointing to. It's his own testimony where he says, I'm fine. I feel good. What dates was he saying this, in the month of September? In October. Okay. And it goes over into just to address the TTD issue with the commission's decision. The commission, in its decision to grant TTD based on medical-causal connection, mentions that the petitioner was terminated and seems to use the termination as justification for its ongoing TTD. Well, let me just confront you with this. According to the record, October 2nd, 2003, treatment records indicates that the complainant was experiencing left buttock and thigh pain that had been really bad the past couple of days, quote-unquote. October 6th, 2003, therapy progress report also references pain radiating down the claimant's legs. So where were we getting the assertion that he had no leg pain until mid-October? That he was fine. He testified he was in perfect shape, according to you. There was no problem. That doesn't seem to be consistent with these treatment records, does it? I mean, your opponent may respond to that, but that seems to be what we're being shown here. Well, it's in the physical therapy records that he said he had 100% improved. But what about the doctor's notes and records that says that he said he had this shooting pain down his legs in October? Are you saying there was no treatment record to indicate that he said that he had this pain that has been really bad the past couple of days on October 2nd, that specific date? Are you saying it doesn't exist? I am unaware of the October 2nd note. And I apologize. I'm not saying it doesn't exist. I don't have the October 2nd note. But if those things are true, wouldn't that seemingly contradict your position that everything was back to normal? By October? Well, on October 2nd, he had the shooting pains. But on October 12th, he had told the doctor he had 100% resolution of his pain. Okay. When did this rollover incident happen? Do we know specifically? Well, his medical record on October 15th said he almost got run over the other day, so he had to rollover and get out of the car. That's on October 15th. The record before that is on October 9th. On October 9th, there's no history of it. Is there an October 13th treatment record? There is not. Well, let me answer that correctly. On October 13th, he provided a history to his medical providers that he testified. He was kneeling next to his car. So it's on the record page 273. Okay. So there is or is not an October 13th treatment record? Yes. There is? There is. There is? There is. I'm sorry. And what does it say? It says that he hurt himself when he rolled out of the way of the car, which is confirmed by the October 15th physical therapy. Okay. The record for October, it's one page ahead of it in the record. Just to get back to the TTD issue, in regard to the commission granting ongoing benefits after November of 2003, they focus on the termination and note that the respondent, the employer, didn't provide any evidence in response to the petitioner's testifying that he was terminated because he showed up late after he had an epidural injection. That's not what the petitioner testified to. The petitioner testified that he was terminated because he overslept and he came in late, and then he didn't show up for work, and then he was terminated. The termination was not at issue in this case. And I point that out as another instance of the commission misstating the facts in the testimony of this case and overturning the decision of the arbitrator. Nobody disputes that the petitioner was terminated. It wasn't at issue. He was terminated for cause. Commissioner Lindsay points that out in her dissent of the decision. But they base their ongoing TTD on his termination issue in that respondent or the employer didn't provide any evidence to the contrary. That's simply not true. He wasn't terminated because he showed up late after he had an epidural injection. Thank you. Counsel, do we have time? Thank you. Counsel, please. Your Honors and Ms. Ulrich. Counsel would, it seems to me, ask the court to change the law to develop some objective standard that the commission must first look to find some type of a significant accident and then see if the kind of injury that the petitioner sustained is, in the commission's opinion, consistent with the severity of the accident. That's a fundamental change in the law that whatever the conditioners condition, if that condition was caused, was aggravated, or if the accident aggravated a condition and the petitioner caused an injury, that would be a sufficient causal basis. The commission here looked at this evidence and found that on an accident date of September 11, 2003, within seven days of that date, on September 18, 2003, medical records, accepting the credibility of medical records, medical records indicate that in therapy, sufficient to have the, for the doctors to recommend therapy, that one week post-MVA, truck hit a car at T, and then the car from the toe hit them from behind, neck and low back started bothering him right away, and a few days later started to get intermittent left buttock and left thigh symptoms. I don't know that she would even dispute that. You know, I mean, she's talking about it's not significant, but I don't think they're disputing there was an accident with some, quote, unquote, injury. How do you respond to her overarching argument that seems to be a conflict in the record ostensibly that the claimant, before this rollover accident, got back to normal? She's saying, in her interpretation of the evidence, that's the case. He was fine until this rollover accident. He had resolved, he was back to normal, no problems until the rollover accident. What evidence can you point us to that contradicts that assertion? The rollover accident is October 15th of 2003. And up to the rollover accident, there is ongoing complaints, as identified in page 16 and 17 of my brief, of significant radicular symptoms. Significant radicular symptoms.  On page 16, it's a typographical error. It says September 25th, 2005. That's September 25th, 2003. In the chronology of events, of significant radicular symptoms, and their own doctor, their own Dr. Zelby said, when I make an opinion of causal connection, I do it, what is the incident which is most closely related with the onset of radicular symptoms? He made my case. Zelby said the significant radicular symptoms didn't start until the rollover, October 15th, 2003, which is just simply not the case. There were significant radicular symptoms before that. And those symptoms are detailed. Within the, on September 22nd, he's complaining to his doctor. He's having shooting pains down both of his legs. I suggested that to her, but here's the question specifically. Did he ever tell his treating doctor before October 15th that everything was fine, he felt great? The nature of the complaints were, as the commission found, waxing and waning. And waxing and waning with, it's a medical, what we have to do is we have to rely upon the medical evidence. We can't say because it got better, it got better. It was over. We have to rely upon the medical evidence in this case. And what does the, that's the medical testimony. So he was improving, not that he was totally back to normal. He was improving, you're saying, but not totally back to normal. Your argument is he was improving, yes, but he had not totally gotten back to normal. You can improve by standing and doing nothing with this kind of injury. Who said that? But he had to live a life. He had to do things. And indeed, Dr. Chang, when he had the incident, having sex with his girlfriend. The doctor says, I mean, people live lives. They don't, when you're injured, you just don't. So he's going to get, the nature of this injury by the, what we have to rely on, the medical expert testimony is, it's causally related, because both Chang said that and Zellwey in effect said it. Zellwey made the mistake of saying there were no significant radicular symptoms before, because he was wrong. But there were. And then when they did the MRI, he found that, yeah, there is a need for surgery. There is a disc. And I think all the treatment is appropriate, but he just never had this problem from the accident. The commission's decision is consistent with the evidence. Was there an October 13th treatment record? I'm sorry, Your Honor? Was there an October 13th treatment record? An October 13th. There was an October 13th daily treatment record, which is C-664. The practitioner had a horrible weekend. The pain kept radiating down the left leg, and he wasn't doing much at all. And when did the rollover incident occur? The rollover incident is recorded October 15th. October 15th, 2003. October 15th, 2003. That's when it's first noted in the record. But when did it occur? It doesn't identify a specific date as to when it occurred. So we don't really have an incident date? We don't have a date on that. Okay. So it could have occurred before the MRI of October 14th? The MRI, I think, was done on the 14th, as I recall. So the rollover could have taken place before that? I'm sorry? The rollover incident could have taken place before that? The rollover could have taken place before the MRI. Thank you. Thank you, Counsel Rebuttal. Thank you, Counsel. The Court will take the matter under advisory for disposition. We stand at recess. Subject to call.